**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| INTERSTATE UNDERGROUND, | ) | |
| WAREHOUSE & STORAGE, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 12-01406-CV-W-GAF |
| | ) | |
| UNDERWRITERS OF LLOYDS | ) | |
| LONDON SYNDICATE NO. 5151 | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Presently before the Court is Defendants Underwriters of Lloyds of London Syndicate No. 5151 ("Lloyd's") and Homeland Insurance Company of New York's ("Homeland") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.[1] (Doc. # 36). Plaintiff Interstate Underground Warehouse & Storage, Inc. ("Plaintiff") opposes. (Doc. # 42). For the reasons stated below, Defendants' Motion is DENIED.

**DISCUSSION**

**I.       FACTS**

Plaintiff operated an industrial park, warehouse, and underground storage business in Kansas City, Missouri (the "Underground Warehouse"). (Amended Complaint ¶ 4). Plaintiff alleged it suffered damage at the Underground Warehouse on or about September 4, 2010, due to a ceiling collapse. (Amended Complaint ¶ 12; Sworn Statement in Proof of Loss (Partial), 1-2). Plaintiff claimed the damages suffered were all covered under insurance policies issued by

---

[1] Lloyd's and Homeland are collectively referred to as "Defendants."

Defendants, which included loss to the covered structure, loss to personal property, a business interruption loss, and additional expenses and loss. (Amended Complaint ¶¶ 12-16).

At the time of the collapse, Plaintiff had two (2) insurance policies in its name, one (1) issued by Lloyd's, Policy Number 000051/0900 (the "Lloyd's Policy"), the other issued by Homeland, Policy Number YSP 2801 (the "Homeland Policy").[2] (*Id.* ¶¶ 10-11). Plaintiff alleged it made a timely claim under the Lloyd's Policy for the damage and loss suffered, but Lloyd's "failed and refused and continues to refuse to fully pay the aforementioned damages." (*Id.* ¶¶ 16-17, 19).

Defendants claim Plaintiff "failed to cooperate and comply with Plaintiff's responsibilities under the policies during Defendants' investigation of this claim." (Answer).[3] The Lloyd's Policy contained a section stating:

**3.      Duties In The Event of Loss Or Damage**

      a.      [Plaintiff] must see that the following are done in the event of loss or damage to covered property:

* * *

            (8)     Cooperate with [Lloyd's] in the investigation or settlement of the claim.

      b.      [Lloyd's] may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

---

[2] The Homeland Policy provided insurance coverage in excess of the coverage provided by the Lloyd's Policy. (*Id.* ¶ 11).

[3] In Defendants' Answer, Defendants included six (6) affirmative defenses and a counterclaim for declaratory judgment, each of which has independently numbered paragraphs. (Answer). The Court will refer to each portion of Defendants' Answer by the heading provided by Defendants.

(Lloyd's London Policy No. 000051/0900 ("Lloyd's Policy"), 27-28). On the Declaration Page

of the Lloyd's Policy Plaintiff was listed as the "Named Insured," but the policy never defined

"any insured." (*Id.* at 2). The Homeland Policy contained a provision stating:

**7.      EXAMINATION UNDER OATH**

> [Plaintiff], as often as may be reasonably required, shall exhibit to any
> person designated by [Homeland] all that remains of any property herein
> described, and shall submit, and in so far as is within [Plaintiff's] power
> cause [Plaintiff's] employees, members of the household and others to
> submit to examinations under oath by any person named by [Homeland]
> and subscribe to the same . . . .

(Homeland Insurance Company of New York Excess Property Policy, Policy Number: YSP

2801 ("Homeland Policy"), 4).

Defendants claim their "rights have been severely prejudiced and that they have been

unable to complete their investigation to determine whether coverage exists for Plaintiff's claim

as well as the nature and extent of Plaintiff's alleged loss" because they have been unable to take

an Examination Under Oath ("EUO") of George Wayne Reeder ("Reeder"). (Second

Affirmative Defense).[4]

Defendants argue there are "undisputed facts demonstrat[ing] that Reeder routinely

act[ed] on Plaintiff's behalf under the guise of his apparent authority creating a principal-agent

relationship between Plaintiff and Reeder." (Doc. # 51, p. 9). For example, Reeder served on

---

[4] Defendants also claim prejudice from their inability to take the Sworn Statements of Cliff Rush
("Rush") or Jim Shockey ("Shockey"). (*Id.*). However, Defendants have not presented any
evidence or argument, other than conclusory statements that Rush was "President of Hill Top
Builders who handled cave maintenance" and Shockey was an "engineer," to establish why
Plaintiff's failure to produce Rush and Shockey constituted a material breach of either
cooperation clause. (Second Affirmative Defense ¶ 3(b), Counterclaim ¶ 40(b)). Moreover,
Plaintiff claims both Rush and Shockey were independent contractors of Plaintiff at the time of
the ceiling collapse. (Rush Aff. ¶ 5; Shockey Aff. ¶ 5). Accordingly, the Court cannot
determine as a matter of law that Plaintiff materially breached the cooperation clause by failing
to produce Rush and Shockey for Sworn Statements.

Plaintiff's first Board of Directors. (Articles of Incorporation of Callaway Mining Co.).[5] Reeder continued to serve on Plaintiff's Board of Directors and as Plaintiff's President from 1978 to 1992. (Interstate Underground Warehouse & Industrial Park, Inc. Annual Registration Reports, 1979-1992). In addition, Plaintiff's General Ledger listed Reeder as a payroll expense. (Interstate Underground Warehouse & Industrial Park, Inc. General Ledger). Reeder also maintained an office at Plaintiff's address where he registered other corporations. (*See e.g.* Application for Certificate of Authority for a Foreign For-Profit Corporation, EEP, Inc.). Regarding the present insurance claim, Reeder corresponded with Defendants on Plaintiff's letterhead. (July 28, 2012, Correspondence between Wayne Reeder and Mr. Corey L. Kraushaar).[6] Further, Defendants cite to Speer's EUO as proof Reeder was "the individual with the greatest knowledge of [Plaintiff's] operations, expenses, and claim." (Doc. # 51, p. 9).[7]

In opposition, Plaintiff produced Reeder's affidavit. In particular, Reeder's Affidavit stated, "At no time during the period of January 1, 2000, through and including the date of my signing this affidavit have I been an owner, shareholder, officer, director, employee, representative, or agent of[,] . . . served as a member of a board of directors acting on behalf of[,] . . . served as a member of any type of committee acting on behalf of[,] . . . served in a managerial capacity as an employee of[,] . . . [or] received a Federal Income Tax W-9 issued to

---

[5] Plaintiff changed its name from Callaway Mining Co. to Interstate Underground Warehouse and Industrial Park, Inc. on December 20, 1988. (Callaway Mining Co. Amendment of Articles of Incorporation).

[6] The correspondence was signed "Wayne Reeder, *Consultant*." (*Id.* (emphasis added)).

[7] Defendants also direct the Court's attention to the fact that Reeder is a convicted felon, although it is unclear how this fact makes Reeder an insured or employee of Plaintiff. (Criminal Docket Sheet for *United States v. Christopher* Case No. 1:93-cr-00041-L-2; *U.S. v. Reeder*, 170 F.3d 93 (1st Cir. 1999)). Accordingly, this fact will not be considered by the Court.

me in my name by [Plaintiff]." (Reeder Aff. ¶¶ 2-6). Reeder claimed he only "had occasion to be in [Plaintiff's] facility . . . as it related to offering [his] services as an independent contractor." (*Id.* ¶ 7).

Defendants claim they initially scheduled the EUOs of Reeder and Dennis Speer ("Speer") for October 19, 2011, through October 21, 2011.[8] (Second Affirmative Defense ¶ 3(b); Counterclaim ¶ 40(b)). On October 12, 2011, Defendants agreed to reschedule the EUOs due to scheduling conflicts and requested Plaintiff provide available dates by October 21, 2011. (Second Affirmative Defense ¶ 3(c); Counterclaim ¶ 40(c)). Defendants claim that from October 2011 until March 2012, Plaintiff continued to request extensions to schedule the EUOs or failed to provide Defendants with dates to schedule the EUOs. (Second Affirmative Defense ¶ 3(c)-(e); Counterclaim ¶ 40(c)-(e)). On April 6, 2012, Plaintiff agreed to produce Speer and Reeder for EUOs in April 2012. (Second Affirmative Defense ¶ 3(h); Counterclaim ¶ 40(h)). On April 19, 2012, and April 20, 2012, Defendants took and completed Speer's EUO but did not have time to begin Reeder's EUO. (Second Affirmative Defense ¶ 3(j); Counterclaim ¶ 40(j)). Defendants rescheduled Reeder's EUO for May 7, 2012, and May 8, 2012. (Second Affirmative Defense ¶ 3(l); Counterclaim ¶ 40(l)). However, on May 2, 2012, Plaintiff informed Defendants Reeder was not available. (Second Affirmative Defense ¶ 3(l); Counterclaim ¶ 40(l)). Thereafter, Defendants made numerous, unsuccessful attempts to schedule Reeder's EUO. (Second Affirmative Defense ¶ 3(m)-(q), (t), Counterclaim ¶ 3(m)-(q), (t)).

In its Amended Complaint, Plaintiff alleges Defendants breached their insurance contract by failing to pay for damages resulting from the collapsed ceiling. (Amended Complaint ¶¶ 9, 19). However, Defendants claim "Plaintiff's failure [to produce Reeder for an EUO] has

---

[8] Speer was "Plaintiff's office manager." (Second Affirmative Defense ¶ 3(b), Counterclaim ¶ 40(b)).

prejudiced Defendants' rights under their policies," and therefore, "there is no coverage for Plaintiff's claim."  (Second Affirmative Defense; Counterclaim ¶ 37).

## II.    LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Summary judgment is appropriate if the evidence, viewed in the light most favorable to the [nonmovant] and giving [the nonmovant] the benefit of all reasonable inferences, shows there are no genuine issues of material fact and [the movant] is entitled to judgment as a matter of law."  *Price v. N. States Power Co.*, 664 F.3d 1186, 1191 (8th Cir. 2011) (citation omitted).  "Once the moving party has made and supported their motion, the nonmoving party must proffer admissible evidence demonstrating a genuine dispute as to a material fact."  *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011) (citation omitted).  Summary judgment should not be granted if a reasonable jury could find for the nonmoving party.  *Woodsmith Publ'g Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III.    ANALYSIS[9]

"'Cooperation clauses' such as the one[s] at issue in this case are valid and enforceable under Missouri law."  *Union Ins. Co. of Providence v. Williams*, 261 F. Supp. 2d 1150, 1152 (E.D. Mo. 2003) (citing *Wiles v. Capitol Indem. Corp.*, 215 F. Supp. 2d 1029, 1031 (E.D. Mo.

---

[9] Because the Underground Warehouse was located in Missouri, this Court will apply Missouri law.  *See St. Paul Fire & Marine Ins. Co. v. Bldg. Const. Enterprises, Inc.*, 484 F. Supp. 2d 1004, 1006 (W.D. Mo. 2007) (citing *Viacom, Inc. v. Transit Cas. Co.*, 138 S.W.3d 723, 724-25 (Mo. 2004)) (noting that in Missouri the law of the state with the most significant contact to the parties and transaction governs); *Accurso v. Amco Ins. Co.*, 295 S.W.3d 548, 551-52 (Mo. Ct. App. 2009) (citation omitted) (noting the location of the insured risk is given the greatest weight of all contacts).

2001)).  An insurer may deny liability coverage to an insured if it proves the insured materially breached the cooperation clause.  *Wiles*, 214 F. Supp. 2d at 1031 (quoting *Hendrix v. Jones*, 580 S.W.2d 740, 742 (Mo. 1979)).  A material breach of a cooperation clause requires the insurer prove:  "(1) the existence of substantial prejudice and (2) the exercise of reasonable diligence to secure the insured's cooperation."  *Williams*, 261 F. Supp. 2d at 1152 (citing *Wiles*, 215 F. Supp. 2d at 1031).

Prejudice results as a matter of law when a named insured refuses to conduct an EUO after multiple requests by the insurer.  *See Wiles*, 215 F. Supp. 2d at 1030-32; *Williams*, 261 F. Supp. 2d at 1150-53.  When the insured is a corporation, the insured must make corporate officers and employees available for an EUO.  *See, e.g., Dyno-Bite, Inc. v. Travelers Cos.*, 439 N.Y.S.2d 558, 560 (N.Y. App. Div. 1981) (citations omitted) ("[A]n insurer may demand that the corporate officers and employees appear, be examined and assist in the investigation as the policy requires them to do or that the corporation be precluded from recovering under the policy."); c*f. State Auto Prop. & Cas. Co. v. Strauss (In re Am. Wood Concepts, LLC)*, Bankruptcy No. 08-50791, Adversary No. 09-5011, 2010 WL 1609690, at *4 (W.D. Mo. Apr. 20, 2010) (noting all members of an LLC are "insureds" under a cooperation clause).

Here, both policies named Plaintiff, a corporation, as the insured.  (Lloyd's Policy, 2; Homeland Policy, 1).  The Lloyd's Policy allowed Defendant to "examine any insured under oath," without defining "any insured," and the Homeland Policy required Plaintiff to "submit, and in so far as is within [Plaintiff's] power cause [Plaintiff's] employees . . . to submit to examinations under oath."  (Lloyd's Policy, 28; Homeland Policy, 4).  Accordingly, if Reeder is "any insured" or Plaintiff's employee, it would be appropriate to find Reeder's refusal to submit to an EUO constituted prejudice as a matter of law.

However, there exists factual disputes between the parties concerning Reeder's status vis-à-vis Plaintiff. Defendants claim Reeder was "Plaintiff's owner/consultant" and present facts demonstrating Reeder's involvement with Plaintiff and Plaintiff's operations. (Second Affirmative Defense ¶ 3(b); Counterclaim ¶ 40(b); *see, e.g.*, Articles of Incorporation of Callaway Mining Co.; Interstate Underground Warehouse & Industrial Park, Inc. Annual Registration Reports, 1979-1992; Interstate Underground Warehouse & Industrial Park, Inc. General Ledger; Application for Certificate of Authority For a Foreign For-Profit Corporation, EEP, Inc.; July 28, 2012, Correspondence between Wayne Reeder and Mr. Corey L. Kraushaar). Although these facts may be evidence Reeder was an insured or an employee of Plaintiff, they are neither dispositive of the issue nor uncontradicted.

Namely, Reeder claims that at the time of the ceiling collapse he was only an independent contractor of Plaintiff. (Reeder Aff. ¶ 7). He expressly claims he was not Plaintiff's owner, shareholder, officer, director, employee, representative, agent, board member, or committee member. (*Id.* ¶¶ 2-5). At this juncture of the litigation, the evidence must be viewed in the light most favorable to Plaintiff, the non-moving party. *See Price*, 664 F.3d at 1191. It would only be appropriate to grant Defendants' Motion for Summary Judgment if no reasonable jury could find for Plaintiff. *See Woodsmith*, 904 F.2d at 1247 (citing *Anderson*, 477 U.S. at 248). Consideration of all the material before the Court shows a reasonable jury could find Reeder was neither an insured nor an employee of Plaintiff.

Therefore, there exists a material dispute between the parties regarding Reeder's status at the time of the ceiling collapse. As a motion for summary judgment is an inappropriate vehicle to resolve this factual dispute, the Court cannot determine Defendants have been prejudiced as a matter of law by their inability to conduct Reeder's EUO. Thus, there exists a material issue of

8

fact about whether Plaintiff materially breached the cooperation clauses of the policies and summary judgment should not be granted.

## CONCLUSION

Defendants are required to show Reeder was either an insured under the Lloyd's Policy or Plaintiff's employee under the Homeland Policy to show Plaintiff's unwillingness to make Reeder available for an EUO constituted prejudice as a matter of law and a material breach of the cooperation clauses. However, Plaintiff presented evidence demonstrating a material issue of fact as to whether Reeder was an insured, an employee, or an independent contractor of Plaintiff. Accordingly, for these reasons and the reasons set forth above, Defendants Motion for Summary Judgment is DENIED.

**IT IS SO ORDERED.**

s/ Gary A. Fenner
GARY A. FENNER, JUDGE
UNITED STATES DISTRICT COURT

DATED: September 23, 2013